Cynthia DAVIS, Respondent,

v.

Michael MATHEWS, Appellant.

No. WD 32868.

Missouri Court of Appeals,
Western District.

March 22, 1983.

Steven P. Callahan, Kansas City, for appellant.

M. Margaret O'Hare, Kansas City, for respondent.

Before SOMERVILLE, C.J., and DIXON and CLARK, JJ.

SOMERVILLE, Chief Judge.

Cynthia Davis (Davis) filed a civil action for assault and battery against Michael Mathews (Mathews) seeking actual and punitive damages. A jury returned a verdict in favor of Davis and awarded her $15,-000.00 for actual damages and $20,000.00 for punitive damages. After an unavailing motion for new trial, Mathews appealed.

Neither the sufficiency of the evidence to support the verdict nor the amounts awarded as damages are questioned by Mathews on appeal. The only points relied on by Mathews on appeal, two in number, are directed towards the admission of certain evidence. A brief recitation of the facts will serve to lay an initial background for the two evidentiary points.

Davis and Mathews casually met one night in a bar in Kansas City, Missouri. Davis had been drinking heavily. The two left the bar together in Mathews' Chevrolet van. After leaving, they smoked some marijuana. At approximately 1:30 A.M. Davis was found lying unconscious along the south edge of I–70 in eastern Jackson County near the exit ramp to Highway 291. According to Davis, Mathews stopped the van, bodily pulled her out of the van through the rear door, and threw her onto the highway because she had resisted sexual advances made by Mathews. Mathews then reentered the van, backed the right rear wheel over her, then started forward, ran a wheel of the van over her again, and then left the scene. Mathews' version of what occurred was entirely different. According to Mathews, Davis, without provocation, went berserk, started screaming, clawing and scratching, and then suddenly opened the right door and jumped out of the van as it was traveling east on I–70 at a speed of approximately 55 miles per hour. Mathews testified that he did not run over Davis when she jumped from the van and did not feel the van strike anything. Shortly thereafter Mathews returned to the scene, and, upon observing an ambulance and several highway patrolmen, continued on without stopping. Physical evidence at the scene, the location of Davis' body, two "blood spots", and a boot belonging to Davis, were consistent with Davis' version of what occurred and inconsistent with Mathews' version. The parties stipulated that the injuries sustained by Davis on the night in question consisted of multiple fractures of the extremities, a ruptured bladder, a fractured pelvis, and lacerations of the liver. It was further stipulated that Davis incurred medical expenses in connection with said injuries amounting to $12,427.86.

On appeal Mathews charges the trial court erred in overruling objections lodged by his counsel to certain questions asked by counsel for Davis on both direct and cross examination.

The first evidentiary point taken up for consideration arose during the direct examination conducted by Davis' counsel of two highway patrolmen called as witnesses on behalf of Davis.

The first highway patrolman was asked whether he contacted Mathews during the course of investigating the incident. The highway patrolman answered in the affirmative. He was then asked whether Mathews made any statement at that time. Counsel for Mathews, outside the presence of the jury, objected on the ground that he wanted to make sure "we don't get into any criminal proceeding". Counsel for Davis advised the court that he had no intention of doing so and the court overruled the objection. The highway patrolman then testified that Mathews made no statement. Counsel for Davis, without objection, then asked the first highway patrolman whether Mathews made any statement when contacted "about Cynthia Davis jumping out of

the van". The highway patrolman answered, "No".

The second highway patrolman was likewise asked whether he contacted Mathews during the course of investigating the incident and he said he had. He was then asked whether Mathews gave a statement and he answered, "No". He was then asked whether Mathews said anything "concerning Cynthia [Davis] having jumped out of the van". Counsel for Mathews objected on the grounds that "[i]t's been asked and answered". The objection was overruled by the trial court and the highway patrolman answered, "No, he did not". The second highway patrolman was then asked whether Mathews said anything about Davis acting in a "bizarre manner or having attacked him while driving his van". The patrolman answered, "No". Counsel for Mathews lodged a late objection, to-wit, "I renew the same objection", which was overruled.

Parenthetically, Mathews contends on appeal that the testimony of the two highway patrolmen that Mathews made no statement to them that Davis jumped from the van or indulged in bizarre behavior was inadmissible because it did not fall within the purview of the "tacit admission" or "admission by silence" doctrine.[1]

Mathews, in his motion for new trial, neither mentioned nor attributed error to the foregoing testimony of the two highway patrolmen, or the trial court's rulings on defense counsel's objections. It is unnecessary to decide whether the trial objections by Mathews' counsel preserved anything for appellate review, as it is well established that error, not assigned as such in a motion for new trial, is not preserved for appellate review. *Crystal Tire Co. v. Home Service Oil Co.,* 525 S.W.2d 317, 322 (Mo. banc 1975).

Mathews, tacitly conceding that the evidentiary issue assigned under this point in his brief was not preserved for appellate review, implores this court to review the

matter as "plain error" under the auspice of Rule 84.13(c). "Plain error", notwithstanding an erroneous, widespread belief to the contrary, was never intended to be an impenetrable safety net for all unpreserved error. Rule 84.13(c), in clear, succinct language, provides that its application is discretionary and should be resorted to only upon a finding that unpreserved error has resulted in "manifest injustice" or a "miscarriage of justice". It is rarely applied in civil cases, is not available to revive issues abandoned by oversight, and is reserved "for those situations in which hatred, passion or prejudice has been engendered". *Sherpy v. Bilyeu,* 608 S.W.2d 521, 523 (Mo. App.1980). The error in question, admittedly unpreserved for appellate review, does not come under the protective umbrella of Rule 84.13(c), Mathews' implorations to the contrary notwithstanding.

The final evidentiary point on appeal, assignment of error with respect to certain cross examination of Mathews conducted by counsel for Davis, occupies a different dispositional niche. Mathews took the stand on his own behalf and, as heretofore noted, testified on direct examination that Davis, of her own volition, jumped from the van as it was traveling east on I–70 at a speed of approximately 55 miles per hour. On cross examination, counsel for Davis asked Mathews "what would have happened" to "Davis' body" if she jumped out of the van when it was going 55 miles per hour. Counsel for Mathews immediately objected on the grounds that the question "called for speculation" and "an opinion beyond the scope of this witness". The trial court overruled the objection and counsel for Davis pursued the matter on cross examination by a series of questions. The trial court's ruling on the objection was assigned as error by Mathews in his motion for new trial, thus, properly preserving it for appellate review.

Technically speaking, the objection made by counsel for Mathews appears to have

---

1. See generally McCormick, Evidence, § 270(b), pp. 651–52, *Creager v. Chilson,* 453 S.W.2d 941, 943 (Mo.1970), and *Keim v. Black-*

*burn,* 320 Mo. 169, 280 S.W. 1046, 1048 (Mo. 1926).

been well taken, and it may well be that this appeal would have been obviated if it had been sustained by the trial court. However, disposition of this particular assignment of error does not stop at this point but demands further inquiry and analysis. Mathews' admittedly speculatory responses to the objectional line of questioning were consistent with his version of the incident rather than Davis' version. He obviously seized upon the opportunity to expound on his theory of defense. Bear in mind Mathews testified on direct examination that Davis jumped from the van and that the van did not run over her and he did not feel the van strike anyone. In response to the objectionable questions, Mathews testified that Davis "pushed off" from the van towards the south and he "imagined" her body would have rolled in a southeasterly direction away from the van and highway after she "landed". Mathews sought to raise an inference, both on direct and cross examination, that any injuries sustained by Davis were occasioned by being struck by another vehicle after she jumped from the van.

As a general principle, error in the admission of evidence is not grounds for reversal if it does not prejudice the complaining party or adversely affect the jury in reaching its verdict. 5A C.J.S. Appeal and Error, § 1724, p. 923 et sequel. See also *Krez v. Mickel,* 431 S.W.2d 213, 216 (Mo.1968), and *Miller v. Haynes,* 454 S.W.2d 293, 297 (Mo.App.1970). It defies credulity to believe that the complained of evidence, in light of all attendant circumstances, was prejudicial to Mathews or adversely affected the jury in reaching its verdict. Although it would have been preferable if it had not crept into the case, it was, at best, harmless error and does not mandate reversal.

Judgment affirmed.

All concur.