**Kenneth HEMPHILL, Appellant,**

v.

**Joseph POLLINA, Respondent.**

**No. WD 75110.**

Missouri Court of Appeals, Western District.

March 26, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 2013.

Application for Transfer Denied June 25, 2013.

Robert A. Clarke, Blue Springs, MO, for appellant.

P. David Wylie, Independence, MO, for respondent.

Before Division Three: CYNTHIA L. MARTIN, Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

CYNTHIA L. MARTIN, Judge.

Kenneth Hemphill ("Hemphill") appeals the trial court's judgment entered in favor of Joseph Pollina ("Pollina"). Hemphill argues that the trial court erred in excluding two pieces of evidence, Pollina's custodial silence and Pollina's *Alford* plea to the charge of assault in the second degree. Hemphill also claims that the trial court erred in submitting a self-defense instruction to the jury because there was not substantial evidence in the record to support a finding that Pollina was in apprehension of imminent danger of death or great bodily harm or that deadly force was reasonable and necessary. We affirm.

## Factual and Procedural Background

On the evening of April 18, 2007, Hemphill and Pollina were both patrons of Karen's Kozy Cabin ("the bar") in Kansas City, Missouri. Hemphill and Pollina engaged in a physical altercation inside the bar. At some point during the altercation, both Hemphill and Pollina went outside. Pollina fired a gun, and Hemphill was struck by a bullet or bullet fragment. A criminal prosecution followed.

The State charged Pollina with assault in the second degree in violation of section 565.060 [1] and armed criminal action in violation of section 571.015. Pollina entered an *Alford* plea to assault in the second degree, and the State dismissed the armed criminal action charge. The trial court suspended Pollina's sentence and placed Pollina on probation. Pollina successfully completed probation in 2010.

Hemphill filed a petition for damages against Pollina in 2009. The petition alleged, *inter alia*, that Pollina "without just cause or provocation, willfully, wrongfully, and unlawfully assaulted [Hemphill] with a deadly weapon, by then and there shooting and wounding [Hemphill] by means of a .45 caliber semi-automatic handgun." Pollina's answer denied the assault allegation and alleged that he acted in self defense.

Prior to trial, Pollina filed a motion in limine ("the motion") that asked the trial court to exclude the "criminal case,

---

charges, and resolution of the criminal case against [Pollina] arising out of the incident alleged in the Petition." The motion admitted section 491.050 allows for a prior conviction to be used in civil case. Pollina's position was that, because his sentence was suspended, there was no conviction rendered against him so that Pollina's *Alford* plea was inadmissible. The trial court granted the motion. In addition, the trial court concluded that Pollina's silence during police questioning was inadmissible.

A two-day jury trial was held in February 2012. During an exchange with the trial court, Hemphill's counsel argued that Pollina's silence and *Alford* plea were both admissions against interest and were thus admissible during trial. The trial court sustained objections to, and thus excluded, the admission of this evidence. Hemphill and Pollina were the only witnesses, and both men testified as to his version of events at the bar. Their respective recountings of the physical altercation and the circumstances surrounding the gunfire differed dramatically.

Hemphill testified that he went to the bar with two friends, Linda and Cynthia.[2] Pollina arrived later in the evening. Linda was at the jukebox when Hemphill first noticed Pollina. Hemphill saw Pollina "messing with" Linda by trying to put his fingers in a hole in Linda's pants. Linda knocked Pollina's hand away, but he continued and became more aggressive toward Linda. At that point, Hemphill interfered, telling Pollina to leave Linda alone. Pollina then stood up and struck Hemphill. They hit each other while rolling on the floor before several people broke up the fight. Hemphill left the bar for a few minutes, but when he returned,

Pollina again was "groping Linda and grabbing at her." Hemphill confronted Pollina, and they had another physical altercation. Immediately after their second physical fight was broken up, Hemphill heard Pollina say, "I'm going to kill you, motherfucker." Hemphill turned around and saw Pollina struggling to remove a gun from his waistband, so Hemphill ran out of the bar. As Hemphill was running away, Pollina fired the gun several times. Hemphill was struck by a bullet or bullet fragment in his foot.

Pollina's testimony described the physical altercation differently. Pollina testified that when he went to the bar on the evening in question, he saw Linda and Karen, both of whom used to be customers of his defunct business. Pollina sat at the bar and spoke to Linda, never making rude or lewd comments to her or touching her. While he was speaking to Linda, Hemphill confronted Pollina, grabbed him, and threw him off the barstool. While the two men were fighting, Pollina saw a gun lying on the floor and grabbed it. According to Pollina's testimony, Hemphill lunged toward him, so Pollina hit him with the gun. At that point, Hemphill left the bar and started running. Pollina then fired more than one round in hopes of scaring Hemphill away from the bar. Pollina testified at trial that he believed he was in danger of bodily harm or death and that his intention in shooting the gun was to "make it out of there alive without [Hemphill] killing me."

Over Hemphill's objection that there was insufficient evidence to support a self-defense instruction, the trial court gave the jury Instruction Number 8. That instruction read:

---

**2.** We refer to the women by their first names because the record does not contain their last names. No disrespect is intended.

Your verdict must be for [Pollina] if you believe:

First, [Pollina] had reasonable cause to apprehend and did apprehend imminent danger of death or great bodily harm from [Hemphill], and

Second, [Pollina] did not create the situation that created his apprehension, and

Third, the shooting of the gun, was in defense against this apprehended imminent danger of death or great bodily harm, and

Fourth, [Pollina] used only such force as was reasonable and necessary.

The jury entered a verdict in favor of Pollina without specifying the basis for its decision. The trial court entered a judgment conforming to the jury's verdict.

Hemphill appeals.

## Analysis

Hemphill raises three points on appeal. First, Hemphill argues that the trial court erred in excluding evidence of Pollina's silence during his interview with detectives as an admission against interest. Second, Hemphill claims that the trial court erred in excluding evidence of Pollina's *Alford* plea to assault in the second degree as an admission against interest. Third, Hemphill contends that the trial court erred in submitting the self-defense instruction to the jury because there was not substantial evidence presented at trial to support the instruction.

### Exclusion of Evidence

Hemphill's first two points on appeal challenge the trial court's exclusion of evidence. "A trial court has great discretion in determining whether evidence should be excluded, and its decision is given substantial deference on appeal." *Khoury v. ConAgra Foods, Inc.*, 368 S.W.3d 189, 195 (Mo.App. W.D.2012). We review the trial court's exclusion of evidence for abuse of discretion, which the appellant has the burden of establishing. *Id.* A trial court abuses its discretion when the exclusion of evidence is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* We will not reverse the trial court's judgment for failure to admit evidence "unless the error materially affected the merits of the action and we find a substantial or glaring injustice." *Id.*

### Evidence of Custodial Silence

Hemphill's first point on appeal is that the trial court abused its discretion in excluding evidence of Pollina's custodial silence during his interview with detectives. Hemphill argues that Pollina's custodial silence is admissible as an admission against interest and is "circumstantial evidence probative of [Pollina's] consciousness of liability."[3] Hemphill claims that the exclusion of evidence of Pollina's custodial silence from the trial was prejudicial.

3. Hemphill's point relied on does not implicate the line of cases which hold that the fact finder may draw a negative inference against a person who asserts the privilege of self-incrimination *while on the stand* during a civil proceeding. *See, e.g., Johnson v. Mo. Bd. of Nursing Adm'rs*, 130 S.W.3d 619 (Mo.App. W.D.2004). Here, Pollina testified during the civil proceeding without invoking the privilege against self-incrimination, and there was no reluctance on his part to discuss his conduct on April 18, 2007. The only material issue for the jury to consider was whether that conduct supported a civil verdict in Hemphill's favor. The trial court did not abuse its discretion in concluding that Pollina's failure to speak to police officers during the much earlier criminal investigation constituted an admissible admission of civil liability.

Generally, an out-of-court statement offered to prove the truth of the matter asserted is hearsay and inadmissible at trial. *Rouse v. Cuvelier*, 363 S.W.3d 406, 420 (Mo.App. W.D.2012). A statement by a party-opponent may be admissible as an admission against interest if the statement meets the following requirements: "(1) a conscious or voluntary acknowledgment by a party-opponent of the existence of certain facts; (2) the matter acknowledged must be relevant to the cause of the party offering the admission; and (3) the matter acknowledged must be unfavorable to, or inconsistent with, the position now taken by the party-opponent." *United Mo. Bank, N.A. v. City of Grandview*, 179 S.W.3d 362, 371 (Mo.App. W.D.2005).

Admissions also include those "statements which the declarant manifestly believed or adopted." *Gordon v. Oidtman*, 692 S.W.2d 349, 355 (Mo.App. W.D. 1985). In other words, silence constitutes an admission in certain circumstances. *Creager v. Chilson*, 453 S.W.2d 941, 943 (Mo.1970). " 'The circumstance must point clearly to the necessity of a reply before [silence] can be admitted at all....' " *Id.* (quoting *Keim v. Blackburn*, 280 S.W. 1046, 1048 (Mo.1926)). A reply is necessary if the "circumstances ... call for a denial." *Id.* A person is not always required to speak. *Id.*

Whether silence constituted an admission is a preliminary question for the trial court to determine. *Id.* "[B]ecause of the uncertainty which attends interpreting a person's silence as an implied admission of a statement made, such evidence is con-sidered by the courts as dangerous and to be received with caution." *Id.* at 944 (internal quotation marks omitted). In making its decision, the trial court considers "the relationship of the declarant to the person whose silence is alleged to constitute an admission, the circumstances under which the statement was made, and the person to whom it was addressed." *Id.*

Here, Hemphill attempted to introduce Pollina's silence during police questioning as an admission. The issue before the trial court, and now before our court, is whether Pollina's reply was "necessary" during police questioning. *Miranda v. Arizona* requires that the police warn the person of the right to remain silent before questioning begins. 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In light of that warning, the circumstances do not call for a denial because there is no duty to speak. *See State v. Dorris*, 191 S.W.3d 712, 715 (Mo.App. S.D.2006). Because Pollina had no duty to speak in response to police questioning, his silence did not constitute an admission admissible at trial.

The trial court did not abuse its discretion in excluding evidence of Pollina's silence during police questioning. Hemphill's first point relied on is denied.

*Evidence of Alford Plea*

Hemphill's second point on appeal is that the trial court abused its discretion in excluding evidence of Pollina's *Alford* plea to the charge of assault in the second degree. Hemphill argues that the *Alford* plea constituted an admission against interest and was, therefore, admissible.[4] Hemphill claims he suffered preju-

---

4. Hemphill did not attempt to offer evidence of Pollina's *Alford* plea for purposes of impeachment. *See* section 491.050 ("Any person who has been convicted of a crime is, notwithstanding, a competent witness; however, any prior criminal convictions may be proved to affect his credibility in a civil or criminal case and, further, any prior pleas of guilty, pleas of nolo contendere, and findings of guilty may be proved to affect his credibility in a criminal case. Such proof may be either by the record or by his own cross-

dice as a result of the exclusion of Pollina's *Alford* plea.

■ As mentioned in the discussion of Hemphill's first point relied on, *supra,* an admission against interest has three characteristics: (1) the party-opponent gave a conscious and voluntary acknowledgement to the existence of certain facts; (2) the facts acknowledged are relevant to the cause presented by the offering party; and (3) the facts acknowledged are either unfavorable to or inconsistent with the position taken at trial by the party-opponent. *United Mo. Bank,* 179 S.W.3d at 371. If a hearsay statement has those three qualifications, it is an admission and admissible at trial.

■ An *Alford* plea does not meet the three requirements for an admission. "Under *North Carolina v. Alford,* 400 U.S. 25, 38–39, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), a defendant may enter what is, in effect, a guilty plea, even though the defendant protests that he or she is innocent of the crime charged." *Nguyen v. State,* 184 S.W.3d 149, 152 (Mo.App. W.D.2006). By entering an *Alford* plea, the defendant merely admits that the evidence against him or her is extensive and would likely result in a conviction. *Id.* The defendant is motivated to enter an *Alford* plea when he or she believes that a plea bargain was in his or her best interest. *Bott v. State,* 353 S.W.3d 404, 405 n. 4 (Mo.App. S.D. 2011).

By entering an *Alford* plea, Pollina admitted that the evidence against him for assault in the second degree was extensive and would have likely resulted in a conviction. However, Pollina did not admit guilt. The *Alford* plea was an assertion of Pollina's innocence while acknowledging the likelihood that he would have received a harsher sentence if he chose to continue to trial. Thus, Pollina's *Alford* plea was not inconsistent with the position he took in the civil trial with respect to his liability. The final requirement for an admission was not present.

The trial court did not abuse its discretion in excluding evidence of Pollina's *Alford* plea. Hemphill's second point relied on is denied.

### Self–Defense Instruction

■ Hemphill admits that Instruction Number 8 complied with Missouri Approved Instruction ("MAI") 32.11 so that the instruction's content was proper. Hemphill argues only that the trial court erred in giving the self-defense instruction because there was not substantial evidence to support a finding that Pollina was either in apprehension of danger or great bodily harm at the time he used deadly force or that the use of deadly force was reasonable. Pollina argues that the testimony he gave at trial was sufficient evidence to support the submission of Instruction Number 8.

■ Whether the trial court properly gave a jury instruction is a question of

examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer."). Hemphill only attempted to enter Pollina's *Alford* plea as an admission against interest, and thus for the truth of the proposition that Pollina was liable. In any event, Hemphill would not have been permitted to introduce Pollina's *Alford* plea as a conviction for purposes of impeachment, as the *Alford* plea resulted in a suspended impo-

sition of sentence. Under Missouri law, the disposition of a criminal charge by suspended imposition of sentence is not a conviction for purposes of impeachment. *See State v. Prell,* 35 S.W.3d 447, 450 (Mo.App. W.D.2000); *M.A.B. v. Nicely,* 909 S.W.2d 669, 671 (Mo. banc 1995) (holding that finding of guilt as a result of an *Alford* plea which resulted in a suspended imposition of sentence was not a conviction for purposes of section 491.050).

law that we review *de novo. Owens v. ContiGroup Cos.,* 344 S.W.3d 717, 723 (Mo. App. W.D.2011). " 'Any issue submitted to the jury in an instruction must be supported by substantial evidence from which the jury could reasonably find such issue.' " *Id.* at 723–24 (quoting *Hayes v. Price,* 313 S.W.3d 645, 650 (Mo. banc 2010)). " 'Substantial evidence is evidence which, if true, is probative of the issues and from which the jury can decide the case.' " *Id.* at 724 (quoting *Hayes,* 313 S.W.3d at 650). In determining whether there was substantial evidence to warrant the instruction, we view the facts in the light most favorable to the submission of the instruction. *Id.* at 723. If the instruction was not supported by substantial evidence, then the trial court gave the instruction in error, but reversal is only appropriate " 'if the error resulted in prejudice that materially affect[ed] the merits of the action.' " *Id.* at 724 (quoting *Hayes,* 313 S.W.3d at 650).

MAI 32.11 sets forth the four requirements for a finding of self defense: (1) "defendant had reasonable cause to apprehend and did apprehend [great bodily harm from plaintiff] [bodily harm from plaintiff] [offensive contact from plaintiff]"; (2) "defendant did not create the situation that caused [defendant's] apprehension"; (3) "the (*describe act of defendant, such as* "*striking of plaintiff*")), was in defense against this apprehended [great bodily harm] [bodily harm] [offensive contact]"; and (4) "defendant used only such force as was reasonable and necessary." The trial court's decision to give Instruction 8 was proper if there was substantial evidence presented at trial that supported each of the four requirements for a finding of self defense. Hemphill's brief argues that there was insufficient evidence to support the first and fourth requirements.

There are two aspects to the first requirement: that the person has reasonable cause to apprehend danger and that the person did apprehend danger. "Whether a person has reasonable cause to apprehend that he is in danger is to be resolved upon the facts and circumstances as they appeared to the defendant at the time he committed his acts of self-defense." *Schoor v. Wilson,* 731 S.W.2d 308, 314 (Mo.App. W.D.1987). Pollina's description of the physical altercation was sufficient to establish that he had reasonable cause to apprehend imminent danger of great bodily harm or death. Pollina testified that Hemphill was the initial aggressor in their physical alteration, as Hemphill confronted Pollina, grabbed him, and threw him off the barstool. Further, Pollina testified that he believed he was in danger of bodily harm or death during the physical altercation with Hemphill. There was sufficient evidence to support the first requirement for self-defense.

The fourth requirement for a finding of self defense is that the force used was reasonable and necessary, which is a question of fact for the jury. *See Gen. Motors Corp. v. Labor & Indus. Relations Comm'n,* 653 S.W.2d 702, 703 (Mo.App. E.D.1983) (holding that whether the use of a pocket knife to repel an attack with a drill was reasonable was a question of fact for the fact finder). The entirety of the evidence presented at trial constituted sufficient evidence for the jury to determine that, based on the circumstances, firing the gun constituted reasonable and necessary force.

The trial court did not err in giving the jury Instruction Number 8, the self-defense instruction. The evidence presented at trial, in particular Pollina's testimony, constituted substantial evidence to support each of the four requirements for a finding of self defense.

Hemphill's third point relied on is denied.

## Conclusion

We affirm.

All concur.

